UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SUMIKA POLYMERS NORTH AMERICA, LLC,

        Case No.

      Plaintiff,

v                                Hon.

GLOBAL TEAM, USA, LLC; PETRA H. CLARK;
STEVEN L. CLARK; MICHAEL S. DUBIN AND
TERRENCE HARRIS,

      Defendants.
_____/

## **COMPLAINT**

      Plaintiff, Sumika Polymers North America, LLC ("SPNA"), by and through its attorneys,

Fraser Trebilcock Davis & Dunlap, P.C., states as follows for its complaint against Defendants:

## **PARTIES, JURISDICTION AND VENUE**

      1.      SPNA is a Delaware Limited liability company with its principal place of

business in Michigan.  The sole member of SPNA is Sumitomo Chemical America, Inc., which

is a New York corporation with its principal place of business in New York.

      2.      Defendant, Global Team USA, LLC ("Global"), is a Michigan limited liability

company that conducted business in Wayne County, Michigan at all times relevant to this action.

Upon information and belief, Global's members are citizens of Michigan.

      3.      Defendant, Petra H. Clark ("Petra Clark"), is a citizen of Michigan who conducted

business in Wayne County, Michigan at all times relevant to this action.

      4.      Defendant, Steven L. Clark ("Steven Clark"), is a citizen of Michigan who

conducted business in Wayne County, Michigan at all times relevant to this action.

5.      Defendant, Michael S. Dubin ("Dubin"), is, upon information and belief, a citizen of Florida.  Mr. Dubin conducts business in the State of Michigan, and, as described in this Complaint, engaged in conduct that resulted in tortious injury to SPNA in Michigan.

6.      Defendant Terrence Harris ("Harris") is an employee or former employee of Global.  Harris is a citizen of Michigan who conducted business in Wayne County, Michigan at all times relevant to this action.

7.      This complaint states a federal law claim for relief arising under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq*. ("RICO"), and claims under state law that arise from the same transactions and occurrences as the RICO claim.  Therefore, the Court has federal question jurisdiction under 28 U.S.C. § 1331 and supplemental jurisdiction under 28 U.S.C. § 1367.  Additionally, there is complete diversity of citizenship between SPNA and Defendants, and the amount in controversy exceeds $75,000.  Jurisdiction is, therefore, also proper under 28 U.S.C. § 1332.  Venue is established in this Court pursuant to 28 U.S.C. § 1391(b).

## GENERAL ALLEGATIONS

**A.      SPNA's Retention of the Defendants to Perform Freight Forwarding and Customs Clearance Services.**

8.      SPNA is a supplier of thermoplastic products used in automotive manufacturing and other industrial and manufacturing applications.

9.      Global represents itself to be a provider of "prompt and secure freight forwarding services worldwide," and advertises those services to include customs clearance services. (https://globalteamusa.com/services.)

10.     SPNA is informed and believes that defendants Petra Clark and Steven Clark are officers and owners of Global. Defendant Dubin holds a customs broker license issued by the

United States Bureau of Customs and Border Protection (the "Customs Bureau").  Global and Dubin have represented that Dubin is employed by Global, and that Dubin provides customs brokerage services to Global's customers.

11.     SPNA imports products that it supplies to its customers from sources outside of the United States. In connection with the shipment of those products and their entry into the United States, SPNA utilizes shipping companies, freight forwarders and other logistics providers and must pay customs charges to the Customs Bureau.

12.     SPNA originally retained Global in 2014 to provide freight forwarding services in connection with SPNA's importation of products into the United States.

13.     In or around August, 2016 SPNA communicated to Global that SPNA wished to retain a new customs broker to provide customs services for SPNA.  Global offered to provide those services and represented that Dubin would handle the work, acting as a licensed customs broker.

14.     SPNA elected to retain Global and Dubin to provide customs services.  In connection with that retention, and at Global's request, SPNA executed a document titled Customs Power of Attorney dated November 21, 2016, that appointed Global as SPNA's agent to, *inter alia*, transact "any and all Customs business…" on SPNA's behalf.  A copy of that Power of Attorney is attached hereto as **Exhibit 1** and its terms are incorporated herein by reference.

**B.     Defendants' Use of Fraudulent Invoices to Misappropriate $608,284.40 from SPNA**

15.     At the time SPNA retained Global to perform its customs services, SPNA's customs charges were being paid under a direct debit/ACH arrangement with the Customs Bureau, pursuant to which the Customs Bureau was paid SPNA's customs charges directly from SPNA's bank account.

16.     The foregoing direct payment arrangement remained in place after SPNA retained Global to act as its customs broker.  The individual Defendants knew, or by virtue of their positions at Global should have known, that direct-payment arrangement would be utilized for payment of the customs charges SPNA would incur going forward.

17.     Notwithstanding the above knowledge of Global's representatives, Global began in November 2016 to send SPNA invoices purportedly to reimburse Global for the same customs charges that SPNA was paying directly to the Customs Bureau out of SPNA's bank account. Global continued to send SPNA those invoices until April 2018, and the combined total amount invoiced was $608,284.40.  An example of one of those invoices is attached hereto as **Exhibit 2**. SPNA is informed and believes that Defendants have copies of all of Global's invoices to SPNA for customs charges.

18.     Global sent SPNA the invoices through email.

19.     The invoice attached as Exhibit 2 and the other invoices that SPNA received from Global described the invoiced charges as duties or other customs charges.  Those invoices included instructions to remit payment to Global's bank account by electronic transfer or physical deposit.

20.     Each Global invoice sent to SPNA as described above was a representation to SPNA that Global had paid customs charges on SPNA's behalf, and that SPNA was obligated to remit funds to Global to reimburse Global for those customs charges.  Those representations were false.  Global had not paid the customs charges described in the invoices.  All of those charges were paid directly to the Customs Bureau from SPNA's bank account.  SPNA did not owe those charges to Global because Global had not paid the charges.  Petra Clark, Steven Clark, Dubin, Harris, and any other representatives of Global who were involved with the preparation

4

and issuance of those invoices knew, or should have known, that the invoices falsely represented that SPNA was indebted to Global for customs charges. Those individuals sent, caused or allowed the invoices to be sent with the intent to fraudulently obtain money from SPNA that neither they nor Global had any right to receive.

21.     SPNA paid Global all of the charges listed in the invoices that are described above, totaling $608,284.40.  SPNA made those payments in reliance on the false representations in the invoices that SPNA was indebted to Global for customs charges.  The employees of SPNA who approved paying Global's invoices were unaware at the time that the Customs Bureau was being paid the invoiced charges by ACH from SPNA's bank account.

22.     SPNA made its payments to Global by electronic funds transfers to Global's bank accounts identified in Global's invoices, starting with an account at JPMorgan Chase Bank, and then beginning on or about May 19, 2017, an account at Citizens Bank.

23.     Global's representatives with access to its banking and other financial records including, upon information and belief, Petra Clark, Steven Clark, Dubin and Harris, knew or should have known that SPNA was transferring payments into Global's bank accounts to pay Global's invoices for customs charges.  Those same persons knew or should have known that Global had no right to receive and retain those payments because Global had not paid the customs charges that were being invoiced to SPNA.

24.     In spite of their knowledge concerning SPNA's payments as described above, Global's representatives including Petra Clark, Steven Clark, Dubin and Harris did not:  (i) notify SPNA that Global was billing SPNA for payments that Global was not entitled to receive; (ii) notify SPNA that Global was receiving payments from SPNA that Global was not entitled to receive; (iii) cause the return of those payments SPNA; or (iv) stop the practice of Global billing

SPNA for payments Global had no right to receive.  Instead, those individuals withheld the truth

from SPNA, and caused or allowed the billings and payments to continue with the intent to

fraudulently retain, and prevent SPNA from recovering, money that neither they nor Global had

any right to retain.

C.   **SPNA's Discovery of the Misappropriation of its Payments and Defendant's Further Attempts to Deceive SPNA and Admissions of Liability.**

25.    In April 2018, SPNA discovered that the payments it made on Global's invoices,

as described above, duplicated ACH payments to the Customs Bureau made directly from

SPNA's bank account.  On or about April 12, 2018, SPNA notified Global of SPNA's discovery

that SPNA had been making duplicate payments.  On or about April 16, 2018, in a telephone call

with representatives of SPNA, Petra Clark represented that Global could arrange for a refund of

the duplicate payments from the Customs Bureau. That was a false statement intended to mislead

SPNA because Petra Clark knew or should have known, *inter alia*,  that Global had not made

any payments to the Customs Bureau on SPNA's behalf so there were no duplicate payments to

recover. Dubin was on the call. He knew or should have known Petra Clark was not telling truth,

and that the Customs Bureau would not have accepted duplicate payments. Despite this

knowledge he said nothing on that call to correct or contradict Petra Clark's statements, allowing

her to mislead SPNA's representatives.

26.    The Defendants' story subsequently changed.  On April 25, 2018, SPNA received

an email from Global's email account listing "Fred Upton" as the sender. The email stated that,

"the money [SPNA paid on Global's invoices] was embezzled by a now former employee."  The

email further stated that Global's legal counsel, "has instructed that we not release the details,"

and that Global "would have to pay you back the money,…. Please accept my sincerest apologies

in not finding this problem earlier. We will endeavor to rectify this situation as quickly as

possible." Petra Clark was copied on that email. A copy of that email is attached hereto as **Exhibit 3**.

27.     The statements in Exhibit 3 were total fabrications sent out in a further attempt to mislead SPNA.  The money SPNA paid had not been embezzled by a "former employee." Instead, Global and the individual Defendants conspired to fraudulently obtain that money from SPNA.  There was no instruction from legal counsel to not release "details."  That was simply an excuse so that Defendants could avoid having to further embellish their fabricated story about embezzlement.  Fred Upton, the purported sender of the email, did not exist.  No one named Fred Upton worked at Global.  SPNA is informed and believes that Harris was the actual sender of the email and listed the fictitious "Fred Upton" as the sender in Exhibit 3 and other emails containing false and misleading statements in order to conceal his role in defrauding SPNA.  Petra Clark, and, upon information and belief, Stephen Clark, and Dubin knew of Harris' deceptive use of the false name, and allowed that use because they also intended for SPNA to be deceived and to obstruct efforts by SPNA to recover its money.

28.     Representatives of SPNA attended a meeting at Global's office in Romulus Michigan on May 3, 2018.  Petra Clark and Harris were present at the meeting, and Dubin participated by telephone.  Petra Clark and Harris continued at that meeting to mislead SPNA by telling lies that included the following:  (i) a female employee who no longer worked for Global had misappropriated SPNA's payments; (ii) that employee, who handled data input and was allowed to write checks and access Global's accounting records, left Global when Global began an "investigation" into SPNA's duplicate payments; (iii)  Global's investigation was still underway; and (iv) Global's attorney had notified law enforcement "authorities" of the embezzlement.  None of this was true because there had been no embezzlement by a former

female data input employee.  Dubin knew SPNA was being lied to and did not speak up at that meeting to disclose the truth. In June 2018, Dubin evidently decided no longer to go along with the lies and informed SPNA that that he believed the embezzlement story was fabricated and that there was no Fred Upton working at Global. In spite of this about-face, his prior conduct had fully supported the fraudulent scheme directed against SPNA.  By the time he tried to distance himself from that scheme, SPNA had already been damaged

29.     In the meeting described above, Petra Clark and Harris said that Global would try and make a claim on its insurance policy to repay SPNA's loss.  They also stated that if insurance coverage was not available they would propose a schedule of payments to SPNA.

30.     After that meeting SPNA learned that Global laid off virtually all of its employees and has either moved out of its Romulus Michigan office, or is in the process of doing so. Global appears to be closing or significantly curtailing its business.

**D.     Global's Abandonment of its Responsibilities to Manage Shipment of SPNA's Products and Failure to Repay SPNA.**

31.     In conjunction with apparently cutting back and possibly shutting down its business, Global failed to discharge its responsibility as SPNA's freight forwarder to arrange for timely shipping and delivery of SPNA's products.  This caused SPNA to incur excess storage, demurrage, and other charges of over $30,000.

32.     Global has not repaid any amount to SPNA, offered to make specific payments, or confirmed whether or not its insurance would cover SPNA's losses.  Global's attorney has not furnished any information concerning the alleged embezzlement, or any contact with law enforcement authorities.

## COUNT I

## VIOLATION OF RICO

33.     SPNA incorporates herein by reference the allegations in paragraphs 1 through 32 above.

34.     At all times relevant to this action Global was an enterprise within the meaning of 18 U.S.C. § 1961(4) and 18 U.S.C. § 1962, and was engaged in activities that affected interstate commerce.

35.     At all times relevant to this action, Petra Clark, Steven Clark, Dubin and Harris were persons within the meaning of 18 U.S.C. § 1961(3), and 18 U.S.C. § 1962 and were employed by or associated with Global within the meaning of 18 U.S.C. § 1962(b).

36.     Petra Clark, Steven Clark, Dubin and Harris conducted, or participated in the conduct of, Global's affairs through a pattern of racketeering activity including numerous predicate violations of 18 U.S.C. § 1343 (wire fraud).  Petra Clark, Steven Clark, Dubin and Harris also conspired to conduct, or participate in the conduct of, Global's affairs through a pattern of racketeering activity including numerous predicate violations of 18 U.S.C.§ 1343 (wire fraud), in violation of 18 U.S.C. § 1962(d).

37.     Specifically, Global, through Petra Clark, Steven Clark, Dubin and Harris, participated in a scheme to defraud SPNA and misappropriate money from SPNA through the submission to SPNA by email of 112 invoices in amounts totaling $608,284.40 that deliberately misrepresented to SPNA that SPNA was obligated to remit funds to Global to pay customs charges, as described in paragraphs 17 through 20 above.  Petra Clark, Steven Clark, Dubin and Harris knew or should have known that:  (i) Global was not paying the invoiced customs charges; (ii) SPNA was paying those charges to the Customs Bureau directly; (iii) Global's

invoices falsely represented that Global had paid those charges and that SPNA owed money to Global as a result and (iv) that Global received and retained payments from SPNA that Global had no right to keep.  Defendants concealed all of the foregoing information from SPNA**.** Defendants agreed to participate in the foregoing scheme, and agreed to the commission of at least 112 separate predicate wire fraud violations.

38.     Global, Petra Clark, Steven Clark, Dubin and Harris engaged in further deceit and concealment in and around April and May 2018.  At that time, Global, through Petra Clark, falsely represented to SPNA that Global had made payments to the Customs Bureau that duplicated the payments from SPNA's account and that Global would obtain a refund for SPNA. Subsequently, through Petra Clark and Harris, a new false story was communicated to SPNA that:  (i) a former Global employee had embezzled SPNA's money; (ii) Global would repay SPNA's losses; and (iii) Global's attorney was taking steps to address the alleged embezzlement, and had directed them not to provide information concerning the perpetrator or details of the supposed scheme.  As described in paragraphs 25 through 28 above, these representations were all materially false and misleading.  Dubin knew SPNA was being lied to but remained silent. Dubin subsequently made the disclosures to SPNA described in paragraph 28 above, but by that time SPNA already had been damaged.

39.     Defendants committed the fraudulent acts described above with intent to deceive and mislead SPNA, in order to obtain funds from SPNA that Global was not entitled to receive and that some or all of the individual Defendants have retained or benefitted from.

40.     Defendants used wire communications transmitted in interstate commerce in furtherance of the scheme to defraud SPNA that is described above.

41.     SPNA is a person within the meaning of 18 U.S.C. § 1961(3) and 18 U.S.C. § 1964(c), and has been injured in its business or property by reason of the violations of 18 U.S.C. § 1962 committed by Defendants.

WHEREFORE, SPNA requests that the Court award the following relief against all Defendants jointly and severally:

a.      Award SPNA its actual damages resulting from the violations of 18 U.S.C. § 1962 by Defendants;

b.      Award SPNA treble damages pursuant to 18 U.S.C. § 1964(c);

c.      Award SPNA its costs and attorney fees as provided in 18 U.S.C. § 1964(c).

d.      Grant SPNA such other or additional relief as the Court deems appropriate under the circumstances.

## COUNT II

### COMMON LAW CONVERSION

42.     SPNA incorporates herein by reference the allegations of paragraphs 1 through 41 above.

43.     As set forth in paragraphs 15 through 24 above, Defendants wrongfully caused SPNA to make payments to Global by participating in a scheme to send SPNA invoices that falsely represented that SPNA owed Global money for customs charges. SPNA paid Global the charges stated in Global's invoices.

44.     Defendants had no right to receive the money paid by SPNA, that money remained the property of SPNA, and Defendants had a duty to return the money to SPNA.

45.     Defendants failed to return the money to SPNA, and their actions constitute conversion. They have retained the money,  caused the money to be retained without permission from SPNA, or otherwise used or realized value from SPNA's money, or  prevented the return of that money, all in violation of SPNA's ownership and property rights in the money.

46.     SPNA has been damaged as a direct and foreseeable result of the wrongful conduct of Defendants described above.

WHEREFORE, SPNA requests that the Court enter judgment in favor of SPNA, and against Defendants, jointly and severally, for all amounts to which SPNA may be found to be entitled, plus interest, costs and reasonable attorney fees.  SPNA also requests such additional relief as the Court deems appropriate under the circumstances, including injunctive relief.

## COUNT III

### STATUTORY CONVERSION PURSUANT TO M.C.L. § 600.2919a − TREBLE DAMAGES AND ATTORNEY FEES

47.     SPNA incorporates by reference the allegations of paragraphs 1 through 46 above.

48.     As set forth in paragraphs 15 through 24 above, Defendants wrongfully caused SPNA to make payments to Global by participating in a scheme to send SPNA invoices that falsely represented that SPNA owed Global money for customs charges.

49.     Because Global received money from SPNA that Global was not entitled to receive, SPNA became entitled to immediate repayment of that money. Instead, that money was retained and converted by some or all of the Defendants to their own use.

50.     To the extent any Defendants did not actually receive and retain SPNA's money, they aided in the concealment of that money, knowing that such money was converted.

12

51.     The wrongful conduct of Defendants described above constitutes conversion under MCL 600.2919a, and SPNA has been damaged as a direct and foreseeable result of that conduct.

WHEREFORE, SPNA requests that the Court enter judgment in favor of SPNA, and against Defendants, jointly and severally, for all damages to SPNA, including three times the actual damages SPNA is found to have suffered, plus interest, costs and reasonable attorney fees, pursuant to MCL 600.2919a.  SPNA also requests such additional relief as the Court deems appropriate under the circumstances, including injunctive relief.

## COUNT IV

## FRAUD/MISREPRESENTATION

52.     SPNA incorporates herein by reference the allegations of paragraphs 1 through 51 above.

53.     The submission to SPNA of Global's invoices for customs charges described in paragraphs 15 through 24 above constituted false representations made to SPNA that SPNA was obligated to remit the invoiced amounts to Global to pay customs charges.

54.     The various statements and communications described in paragraphs 25 through 28 above, that Global would get a refund of duplicate payments, and subsequently blaming the loss of SPNA's money on the conduct of an embezzler/former Global employee, constituted false representations made to SPNA that Global and the individual Defendants were not culpable or complicit in misappropriating SPNA's money.

55.     Each of the individual Defendants made some or all of the false representations described in the preceding two paragraphs with knowledge that they were false, or concealed the truth from SPNA, as follows:

13

a.   The individual Defendants either issued, caused, or knew of the issuance of Global's invoices that represented that SPNA was obligated to repay Global for advancing payments for customs charges, even though they each knew or should have known that SPNA's customs charges would be paid directly from SPNA's bank account without the need for Global to advance funds.  Petra Clark and Dubin confirmed their knowledge of SPNA's direct payments in emails they sent in November 2016, copies of which are attached hereto as **Exhibits 4 and 5** respectively and incorporated herein by reference. The individual Defendants had knowledge of Global's financial records, and knew or should have known that Global was not paying the charges for which it was invoicing and receiving payments from SPNA.

b.   Petra Clark misrepresented the status and whereabouts of SPNA's money, and how that money had been applied, when she told SPNA in April 2016 that Global had paid the money to the Customs Bureau and that refunds of any duplicate payments could be requested from the Customs Bureau.  Dubin overheard those statements and did not correct or contradict them.  As stated in the prior sub-paragraph, Petra Clark and Dubin both knew or should have known that Global had not made any customs payments, duplicate or otherwise. Dubin knew the Customs Bureau would not have accepted duplicate payments.

c.   Harris, first by email under the alias "Fred Upton" and then at the May 3, 2018 meeting with SPNA's representatives, and Petra Clark at that same meeting, told a series of lies about embezzlement by a former employee, that an investigation of the embezzlement was being conducted and that Global's lawyer had gone to the

"authorities."  At the May 3, 2018 meeting Dubin knew SPNA was being lied to and said nothing until over a month later to reveal that the story Petra Clark and Harris were telling was a total fabrication.

56.     The Defendants who made the foregoing misrepresentations to SPNA intended to deceive SPNA, or alternatively, acted recklessly without knowledge as to the truth or falsity of their representations, and with no regard for the impact of their conduct on SPNA.

57.     The Defendants who failed to disclose material information acted deliberately and intended for SPNA to be deceived, or alternatively, acted recklessly with no regard for the impact of their conduct on SPNA.

58.     The Defendants intended for SPNA to rely on the respective false and misleading representations, that they either made or failed to correct.

59.     SPNA relied on the false representations that Defendants made and/or aided in concealing by issuing payments to Global on its falsified invoices and in postponing taking immediate action to recover its funds and otherwise enforcing its rights against Defendants.

60.     As a direct and foreseeable result of Defendants' conduct as described above, SPNA has been damaged.

WHEREFORE, SPNA requests that the Court enter judgment in favor of SPNA and against Defendants, jointly and severally, for all amounts to which SPNA may be found entitled, plus interest, costs and reasonable attorney fees.  SPNA also requests such other relief as the Court deems appropriate under the circumstances.

## COUNT V

**CONSTRUCTIVE FRAUD - NEGLIGENT/INNOCENT MISREPRESENTATION**

61.     SPNA incorporates herein by reference the allegations in paragraphs 1 through 60 above.

62.     As described above, Defendants made material misrepresentations and/or failed to disclose material information to SPNA on subjects that included Global's billings to SPNA and what happened to the funds SPNA paid Global in reliance on those billings.

63.     Defendants had a duty to exercise due care to ensure that all representations to SPNA that they either made directly, or of which they were aware, were truthful, complete and not misleading.  Defendants knew or should have known that SPNA was being deceived and misled, they failed to disclose this to SPNA, and accordingly acted negligently.

64.     SPNA relied on the false representations Defendants made and/or aided in concealing in issuing payments to Global on its invoices and in postponing taking immediate action to recover its funds and otherwise enforcing its rights against Defendants.

65.     As a direct and foreseeable result of the foregoing materially false and misleading representations and its reliance thereon, SPNA has been damaged and Defendants benefited from SPNA's injury.

WHEREFORE, SPNA requests that the Court enter judgment in favor of SPNA and against Defendants, jointly and severally, for all amounts to which SPNA may be found entitled, plus interest, costs and reasonable attorney fees.  SPNA also requests such other relief as the Court deems appropriate under the circumstances.

## COUNT VI

## MONEY HAD AND RECEIVED

66.     SPNA incorporates herein by reference the allegations of paragraphs 1 through 65 above.

67.     At the time SPNA paid Global's invoices, SPNA expected that Global would return any payment that Global had no right to receive and/or retain, and Defendants were obligated to return the money SPNA paid or cause its return.

68.     Defendants have failed and refused to return the money SPNA paid to Global as described herein.

69.     Defendants have no right to retain SPNA's money.

70.     Under the circumstances, Defendants must be ordered to return the money SPNA paid to Global to prevent injustice.

WHEREFORE, SPNA requests that the Court enter judgment in favor of SPNA and against Defendants, jointly and severally, for all amounts to which SPNA may be found entitled, plus interest, costs and reasonable attorney fees.  SPNA also requests such other relief as the Court deems appropriate under the circumstances.

## COUNT VII

## BREACH OF CONTRACT

71.     SPNA incorporates herein by reference the allegations of paragraphs 1 through 70 above.

72.     SPNA and Global entered into a contract that required Global to, *inter alia*:  (i) arrange, and take all actions needed for, the timely and cost-effective shipment of SPNA's products and (ii) act as SPNA's agent in dealings with the Customs Bureau, which required, *inter*

*alia*, providing SPNA with accurate billings for customs charges, and ensuring that money SPNA remitted to pay such charges was correctly applied.

73.     The terms of the parties' contract are based on the Power of Attorney, custom and practice in the industry and the parties' course of dealing.

74.     SPNA has performed all of its obligations under its contract with Global.

75.     Global has materially breached the parties' contract by, *inter alia*, failing to perform the actions needed to ensure the timely shipment and delivery of SPNA's products, by sending SPNA invoices for customs charges that SPNA did not actually owe, and by failing to return the money SPNA remitted to pay those invoices.

76.     As a direct and foreseeable result of Global's breach of contract, SPNA has been damaged.

77.     The individual Defendants are personally liable for the foregoing breaches of duty toward SPNA and for SPNA's damages, notwithstanding any claim or defense that Global should be the only liable party.  Defendants used Global to perpetrate fraudulent and tortious actions against SPNA as described in this complaint.  The individual Defendants exercised control over Global in a manner that caused Global to breach its obligations to SPNA, resulting in harm to SPNA that directly benefited the individual Defendants who received SPNA's misappropriated funds and/or benefited from the misappropriation of those funds.  The individual Defendants have shut down Global's operations, and transferred assets and property out of Global such that Global no longer has the money misappropriated from SPNA, nor other income, assets or property sufficient to pay SPNA's damages.  Global's separate existence, if any, should be disregarded and the individual Defendants should be held personally liable for the damages SPNA has suffered.

WHEREFORE, SPNA requests that the Court enter judgment in favor of SPNA and against all Defendants, jointly and severally, for all amounts to which SPNA may be found entitled, plus interest, costs and reasonable attorney fees.  SPNA also requests such other relief as the Court deems appropriate under the circumstances.

### COUNT VIII

### NEGLIGENCE

78.     SPNA incorporates herein by reference the allegations of paragraphs 1 through 77 above.

79.     Defendants owed SPNA a duty to act with ordinary care with respect to Global's billings to SPNA and the payments SPNA remitted to Global to pay those billings.

80.     The foregoing duty required Petra Clark, Steven Clark and Harris to, *inter alia*:

    a.     Review and supervise the issuance of invoices to SPNA so that SPNA was invoiced only for amounts that it actually owed and that those invoices otherwise accurately stated SPNA's obligations to Global and/or the Customs Bureau.

    b.     Implement safeguards and procedures and to supervise Global's employees so that payments SPNA remitted to Global were applied to the correct obligations and to prevent misappropriation of SPNA's funds.

81.     As a licensed customs broker working for Global, and pursuant to the Power of Attorney, Dubin was subject to the same duty of care owed to SPNA and to take actions to perform in accordance with that duty of care as described in the preceding two paragraphs.

82.     Defendants were negligent and breached their duties to SPNA as described above. These breaches, as described above, included: (i) failing to review and supervise Global's

issuance of its invoices in order that SPNA was only billed for charges it legitimately owed to Global; (ii) failing to monitor, supervise and accurately account for Global's receipt of payments from SPNA and the proper application of those payments; and (iii) failing to safeguard, preserve and return to SPNA the money that SPNA paid on Global's invoices that Global had no right to receive.

83.     As a result of Defendant's negligence as described above, Global issued invoices to SPNA for amounts SPNA was not obligated to pay.  In addition, the money SPNA paid in reliance on those invoices was lost or misappropriated after SPNA sent it to Global's bank accounts.

84.     As a direct and foreseeable result of the foregoing, SPNA has been damaged.

85.     The individual Defendants are personally liable for the foregoing breaches of duty toward SPNA and for SPNA's damages, notwithstanding any claim or defense that Global should be the only liable party.  Defendants used Global to perpetrate fraudulent and tortious actions against SPNA as described in this complaint.  The individual Defendants exercised control over Global in a manner that caused Global to breach its obligations to SPNA, resulting in harm to SPNA that directly benefited the individual Defendants who received SPNA's misappropriated funds and/or benefited from the misappropriation of those funds.  The individual Defendants have shut down Global's operations, and transferred assets and property out of Global such that Global no longer has the money misappropriated from SPNA, nor other income, assets or property sufficient to pay SPNA's damages.  Global's separate existence, if any, should be disregarded and the individual Defendants should be held personally liable for the damages SPNA has suffered.

WHEREFORE, SPNA requests that the Court enter judgment in favor of SPNA and against Defendants, jointly and severally, for all amounts to which SPNA may be found entitled, plus interest, costs and reasonable attorney fees.  SPNA also requests such other relief as the Court deems appropriate under the circumstances.

## COUNT IX

### BREACH OF FIDUCIARY DUTY

86.     SPNA incorporates herein by reference the allegations of paragraphs 1 through 85 above.

87.     In retaining Global to act as its freight forwarder and customs broker, SPNA placed its trust in the competence and integrity of Global, and of Petra Clark, Steven Clark, Dubin and Harris as Global's agents who would perform those services.  Defendants assumed control over shipment of SPNA's products and its transactions with the Customs Bureau.  As a result of the foregoing they became subject to the duties of a fiduciary with respect to SPNA, which included a duty of loyalty to SPNA, the duty to exercise good faith and due care in carrying out their activities on SPNA's behalf, and the duty to act at all times in SPNA's best interest.  They were also obligated to refrain from self-dealing or from profiting at SPNA's expense with respect to any transactions involving SPNA, except for receiving compensation SPNA agreed to pay for their services.

88.     Defendants breached their fiduciary duties owed to SPNA.  As described in detail above, their breaches included:  (i) failing to review and supervise Global's issuance of its invoices in order that SPNA was only billed for charges it legitimately owed to Global; (ii) failing to monitor, supervise and accurately account for Global's receipt of payments from SPNA and the proper application of those payments; and (iii) failing to safeguard, preserve and return to

SPNA the money that SPNA paid on Global's invoices that Global had no right to receive. In addition, the Defendants wrongfully received a benefit at SPNA's expense when SPNA's money paid to Global for improperly billed charges was not returned but instead was misappropriated by or otherwise held for the benefit of the Defendants.

89.     As a direct and foreseeable result of Defendants' breach of their fiduciary duties, SPNA has been damaged.

90.     The individual Defendants are personally liable for the foregoing breaches of duty toward SPNA and for SPNA's damages, notwithstanding any claim or defense that Global should be the only liable party. Defendants used Global to perpetrate fraudulent and tortious actions against SPNA as described in this complaint. The individual Defendants exercised control over Global in a manner that caused Global to breach its obligations to SPNA, resulting in harm to SPNA that directly benefited the individual Defendants who received SPNA's misappropriated funds and/or benefited from the misappropriation of those funds. The individual Defendants have shut down Global's operations, and transferred assets and property out of Global such that Global no longer has the money misappropriated from SPNA, nor other income, assets or property sufficient to pay SPNA's damages. Global's separate existence, if any, should be disregarded and the individual Defendants should be held personally liable for the damages SPNA has suffered.

WHEREFORE, SPNA requests that the Court enter judgment in favor of SPNA and against Defendants, jointly and severally, for all amounts to which SPNA may be found entitled, plus interest, costs and reasonable attorney fees.  SPNA also requests such other relief as the Court deems appropriate under the circumstances.

Respectfully submitted,

FRASER TREBILCOCK
DAVIS & DUNLAP, P.C.


By:  */s/Jonathan T. Walton, Jr.*
Jonathan T. Walton, Jr. (P32969)
One Woodward Avenue, Suite 1550
Detroit, MI 48226
(313) 237-7300
jwalton@fraserlawfirm.com
lfaussie@fraserlawfirm.com
Dated: June 25, 2018                    Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SUMIKA POLYMERS NORTH
AMERICA, LLC,

                                                    Case No.

    Plaintiff,

v                                                   Hon.

GLOBAL TEAM, USA, LLC; PETRA
H. CLARK; STEVEN L. CLARK;
MICHAEL S. DUBIN AND
TERRANCE HARRIS,

    Defendants.

_____/

## **INDEX OF EXHIBITS TO THE COMPLAINT**

EXHIBIT 1        Customs Power of Attorney given by Sumika Polymers
                 North America (SPNA) to Global Team USA, dated
                 November 21, 2016.
EXHIBIT 2        Example Global Team USA Invoice to SPNA for customs
                 charges dated November 28, 2016.
EXHIBIT 3        "Fred Upton" email dated April 25, 2018 re: Alleged
                 embezzlement.
EXHIBIT 4        Petra Clark email dated November 14, 2016 re: Direct
                 Payment of Customs Charges by SPNA.

EXHIBIT 5        Michael Dubin email dated November 22, 2016 re: SPNA
                 ACH agreement with U.S. Customs.

# EXHIBIT 1



**Global Team USA LLC**

# CUSTOMS POWER OF ATTORNEY

Business Type – check one

| | |
|---|---|
| **X** | Corporation |
| | Individual |
| | Partnership / LP |
| | Sole Proprietorship |
| | LLC |
| | LLP |
| | Nonresident |

Importer IRS #: _____

Social Security #: _____

Customs Assigned #: _____

**KNOW ALL MEN BY THESE PRESENTS**: That, _Sumika Polymers North America Inc_
(Full legal name of individual, partnership name and partners name, limited partnership name and general partners names, limited liability partnership name, sole proprietorship name, corporation name, or limited liability company name – use attachment if necessary)

Doing business as (DBA) _A Corporation_ under the laws of the State of _Georgia_

residing or having principal place of business at (Address) _121 Hudson Industrial drive_

hereby constitutes and appoints each of the following **Global Team USA, LLC** through its Officers and Employees, specifically authorized to act for the foregoing. If a non-resident corporation, we further authorize for foregoing to accept service of process for the limited purpose of Customs business only, and for the appointment of sub-agent(s). If a resident corporation, we further authorize any of the foregoing to appoint as our agent, such other broker(s) as may be required. Such agent(s) shall be authorized to accept service of process for the limited purpose of Customs business only on our behalf as true and lawful agent and attorney-in-fact of the grantor named above for and in the name, place, and stead of said grantor from this date and in all Customs ports, and in no other name; to make, endorse, sign, declare, or swear to any entry, withdrawal, declaration, certificate, bill of lading, or other document required by law or regulation in connection with the importation, transportation, or exportation of any merchandise shipped or consigned by or to said grantor; to receive, endorse and collect checks issued for Customs duty refunds in grantor's name drawn on the Treasurer of the United States; to perform any act or condition which may be required by law or regulation in connection with such merchandise; to receive any merchandise deliverable to said grantor;

To make endorsements on bills of lading conferring authority to transfer title, make entry or collect drawback, and to make, sign, declare, or swear to any statement, supplemental statement, schedule, supplemental schedule, certificate of delivery, certificate of manufacture, certificate of manufacture and delivery, abstract of manufacturing records, declaration of proprietor on drawback entry, declaration of exporter on drawback entry, or any other affidavit or document which may be required by law or regulation for drawback purposes, regardless of whether such bill of lading, sworn statement, schedule, certificate, abstract, declaration or other affidavit or document is intended for filing in said district or in any other customs port.

To sign, seal and deliver for and as the act of said grantor any bond required by law or regulation in connection with the entry or withdrawal of imported merchandise or merchandise exported with or without benefit of drawback, or in connection with the entry, clearance, lading, unlading or navigation of any vessel or other means of conveyance owned or operated by said grantor, and any and all bonds which may be voluntarily given and accepted under applicable laws and regulations, consignee's and owner's declarations provided for in section 485, Tariff Act of 1930, as amended, or affidavits in connection with the entry of merchandise;

To sign and swear to any document and to perform any act that may be necessary or required by law or regulation in connection with the entering, clearing, lading, unlading or operation of any vessel or other means of conveyance owned or operated by said grantor;

To act as an authorized agent for Export Control and Census Reporting purposes and to make, sign, swear to or endorse any export declarations, export documents, bills of lading, carnets or other documents necessary for the completion of an export on grantor's behalf as may be required under law and regulation and to appoint forwarding agent on grantor's behalf;

Grantor waives the confidentiality requirements of Sections 111.24 of the Customs Regulation and the requirement in Section 111.36 of the Customs Regulations that the Customs Broker transmit a copy of its bill for service directly to the importer, and authorizes the Customs Broker to transmit its bill for services and copies of the Customs entry documents and related documents (CBP-7501 or other documents used to make entry, commercial invoices, etc.) through Grantor's forwarder. No part of this agreement or any other agreement forbids or prevents direct communication between the importer or other party in interest and the Customs Broker.

And generally to transact at the Customhouses in said port any and all Customs business, including making, signing and filing of protests under Section 514 of the Tariff Act of 1930, in which said grantor is or may be concerned interested and which may properly be transacted or performed by an agent and attorney, giving to said agent and attorney full power and authority to do anything whatever requisite and necessary to be done in the premises as fully as said grantor could do if present and acting, hereby ratifying and confirming all that the said agent and attorney shall lawfully do by virtue of these presents; the foregoing power of attorney to remain in full force and effect until revoked and such revocation in writing is duly given to and received by the Port Director of Customs of the port aforesaid. If the donor of this power of attorney is a partnership, the said power shall in no case have any force or effect after the expiration of 2 years from the date of its receipt in the office of the Port Director of Customs of the said port.

*The execution of this Power of Attorney acknowledges that we have read the Terms and Conditions of service as outlined on the subsequent page of this Customs Power of Attorney and agree to such Terms and Conditions.*

By signing this form, the signatory certifies that he / she has full authority to execute this power on behalf of the Grantor.

**IN WITNESS WHEREOF: the said** _Marc Kennedy_



**Global Team USA LLC**

# CUSTOMS POWER OF ATTORNEY

(Full legal name of individual, partnership, partnership name and partners name, limited partnership name and general partners names, limited liability partnership name, corporation name, or limited liability name.)

has caused these presents to be sealed and signed **(Signature)** _____

(Capacity - Title) _Logistic Manager_                          Date: _11-21-2016_

If you are the importer of record, payment to the broker will not relieve you of liability for customs charges (duties, taxes, or other debts owed CBP) in the event the charges are not paid by the broker.  Therefore, if you pay by check, customs charges may be paid with a separate check payable to U.S. Customs and Border Protection which shall be delivered to CBP by the broker.  Importers who with to utilize this procedure must contact our office in advance to arrange timely receipt of duty checks.

# __EXHIBIT 2__

 Global Team USA

# INVOICE

11301 Metro Airport Center Drive
Suite 170
Romulus, MI 48174
(734) 992-3208

| | |
|---|---|
| DATE | 11/28/2016 |
| INVOICE # | 1600448 |
| CUSTOMER ID | 141116-020 |
| DUE DATE | 12/5/2016 |

**CLIENT:**

**BILL TO**

SUMIKA POLYMERS NORTH AMERICA
121 HUDSON INDUSTRIAL DRIVE
GRIFFIN, GA 30224 4541

**\*\*\*\* CUSTOMS DUTY INVOICE – PAYABLE IN 7 DAYS \*\*\*\***

BOL/AWB:                          KKLU JPKA094374
CUSTOMS ENTRY NUMBER    B3T-1600448 2

| DESCRIPTION | TAXED | AMOUNT |
|---|---|---|
| CUSTOMS ENTRY SERVICES | | |
| U.S. CUSTOMS DUTIES & TAXES | | 6,343.14 |
| IMPORTER SECURITY FILING | | |

REMIT TO:        Global Team USA
ACCOUNT: ⬛⬛⬛ ROUTING: ⬛⬛⬛ (ACH OR WIRE)
BANK ADDRESS: 10421 Middlebelt Rd - Romulus, MI 48174

**WIRE MUST BE PAID IN 7 DAYS / ACH MUST BE PAID IN 6 DAYS**

| | |
|---|---|
| Subtotal | 6,343.14 |
| Taxable | - |
| Tax rate | |
| Tax due | - |
| Other | - |
| **TOTAL** | **$   6,343.14** |

**OTHER COMMENTS**

TO AVOID PENALTIES - MUST REMIT WITHIN 7 DAYS VIA WIRE TRANSFER
OR PHYSICAL DEPOSIT INTO ANY JPMORGAN CHASE BRANCH

INTL WIRE: SWIFT CODE: ⬛⬛⬛ - SAME ADDRESS AS ABOVE

Make all checks payable to
[Your Company Name]

If you have any questions about this invoice, please contact
[Name, Phone #, E-mail]
*Thank You For Your Business!*

# **<u>EXHIBIT 3</u>**

**From:** Marc Kennedy
**Sent:** Wednesday, April 25, 2018 12:59 PM
**To:** Joe Johnson <jjohnson@sumikapna.com>; Ted Wieczorek <twieczorek@sumikapna.com>; Brian Weider <bweider@sumikapna.com>
**Subject:** Fwd: Sumika Customs Issue

Team,

See below regarding the customs duties we paid to Global Team USA.


Marc Kennedy

Corporate Logistics Manager
Sumika Polymers North America Inc.
45525 Grand River Ave
Suite 200
Novi, MI 48374
(248) 794-8773
mkennedy@sumikapna.com


NOTICES:

Confidential Information - This email is for use by the intended recipient(s) and may contain privileged, confidential or copyrighted information. Unauthorized use, copying or distribution of this e-mail, in whole or in part, is strictly prohibited. If you should not be an intended recipient of this e-mail, please notify the sender by return e-mail and delete this e-mail.

No Contract Formation - This e-mail does not constitute a contract or an offer or acceptance of an offer to enter into a contract. Further, this e-mail may not be used to modify, supplement, novate, or waive any rights with respect to an existing contract or other binding commercial terms.

Technical Information - By using any Technical Information contained herein, Recipient agrees that said Technical Information is given by Sumitomo Chemical Co, Ltd for convenience only, without any warranty or guarantee of any kind, and is accepted and used at your sole risk. Recipients are encouraged to verify independently any such information to their reasonable satisfaction. As used in this paragraph, "Technical Information" includes any technical advice, recommendations, testing, or analysis, including, without limitation, information as it may relate to the selection of a product for a specific use and application.


From: Fred Upton
Sent: Wednesday, April 25, 12:09 PM
Subject: Sumika Customs Issue
To: Marc Kennedy
Cc: Petra Clark

This situation has caused us to find some unfortunate news. We now have discovered that the money was embezzled by a now former employee. Our lawyer has instructed that we not release the details. In short this means that we will have to pay you back the money. The amount still needs to be verified, there are a few discrepancies, but not much.

These funds are not something that we have readily available. We will need to come to some type of payment arrangement. Please accept my sincerest apologies in not finding this problem earlier. We will endeavor to rectify this situation as quickly as possible.


Best Regards,
Fred Upton
Accounting Department

GLoBAL TEAM USA, LLC
11301 Metro Airport Center Dr.
Suite 170
Romulus, MI 48174
Phone   (734) 992-3208 ext. 128
Fax        (734) 992-3649

Global Team USA LLC
Like us on Facebook
Follow us on LinkedIn



"All business is undertaken according to our standard terms and conditions which can be received via e-mail upon request. These conditions have clauses that may limit our liability."

# **<u>EXHIBIT 4</u>**

Upon your agreement  i ll approach Randi with it and I wish you and Steve all the best running your company to prosperity and success.

---

**From:** Petra Clark <Petra.Clark@globalteamusa.com>
**Sent:** Monday, November 14, 2016 10:09 PM
**To:** fbshatti@msn.com
**Subject:**


Hi Foad,

I have a meeting with German manufacturers tonight which I forgot (and am late for now) about but will reach out to in the next couple of days.


So I have thought over what you spoke about yesterday and I have put Jonathan on notice that unless something does come in by Christmas that he won't have a job in the new year at GTU. He advised he understood and would try harder – if he doesn't he will be gone.


Matt is learning parts of ocean imports so that Dakota can be trained for Exports. Sumika will have their first bookings come in any day and all we will handle in the beginning is the customs clearance, monitoring of the containers and Delivery Order. This will net us $ 300 per move on those services only and once it is full blown it will be 900 containers total per year. Marc is trying to make the move so freight charges are being paid here, but for now it is a blessing that we only handle the monitoring, clearance and Delivery Order. Duties will be paid electronically – Michael is in touch with Marc, so no costs for now.


Marc also has his own company and the first air shipment is just now delivering in China – China is very slow in doing clearance and delivery. After that goes well we will have weekly airfreights for him from USA to Germany some of them 2000kg... This is within the next couple of weeks it will begin. Jeremy has good profit margins on this.


Terry is vital to our accounting and I.T. and I do not want for him to leave. He does work a lot – even off hours to make things keep moving. We can always count on him and that does not come so easily, plus when we increase he will be necessary.


One more worry I have is if everyone is being let go how will things get done – right now 9 out of 10 times I have to jump into the departments and do operations on top of the sales and everything else.

Just wanted to make sure you knew I am working on this.

# **EXHIBIT 5**

## Jonathan Walton

| | |
|---|---|
| **From:** | Michael S. Dubin <USCB@globalteamusa.com> |
| **Sent:** | Tuesday, November 22, 2016 11:31 AM |
| **To:** | Marc Kennedy; Joe Johnson |
| **Subject:** | RE: Emailing - ACH form for customs.pdf |
| **Attachments:** | mdach.pdf |

Hello Again Marc / Joe

I just had an interesting conversation with U.S. Customs – National Finance Center.

Since, you previously were set up on ACH and since they have the name of a Mr. Brian Weider on your profile, all we need is for Brian to send them an email requesting your PUN—Payer Unit Number. Then forward that Number to me. The email is:

ach-customs@cbp.dhs.gov

If Mr. Weider is no longer employed with your company, please advise that to me in writing & I will submit the attached application.

Please let me know

Thank You
Michael

---

**From:** Marc Kennedy [mailto:mkennedy@sumikapna.com]
**Sent:** Tuesday, November 22, 2016 9:06 AM
**To:** Michael S. Dubin ; Joe Johnson
**Subject:** FW: Emailing - ACH form for customs.pdf

Michael,

Please review the attached ACH form.

If you need anything specifically from us let us know and we will try and figure out what to do with your help.

Thanks!!

Marc Kennedy